ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO<br><br>Parte Apelada<br><br>v.<br><br>AGAIA LATIN AMERICA, INC.; JOSÉ ANÍBAL SANTIAGO SANTIAGO, LIZETTE AGUILILLA SANTIAGO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS;<br>G3 CHEMICALS, INC.<br><br>Parte Apelante | KLAN202400586 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: SJ2023CV07932<br><br>Sala: 502<br><br>Sobre: COBRO DE DINERO, INCUMPLIMIENTO DE CONTRATO Y EJECUCIÓN DE GRAVAMEN INMOBILIARIO |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de julio de 2024.

Compareció ante este Tribunal la parte apelante, Agaia Latin America, Inc. (en adelante, "Agaia"), el Sr. José Aníbal Santiago Santiago (en adelante, el "señor Santiago"), la Sra. Lizette Aguililla Santiago (en adelante, la "señora Aguililla"), la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "SLG") y G3 Chemicals, Inc. (en adelante, "Chemicals") (en adelante y en conjunto, los "Apelantes"), mediante recurso de apelación presentado el 12 de junio de 2024. Nos solicitaron la revocación de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 26 de abril de 2024, notificada y archivada en autos en la misma fecha. Dicho dictamen fue objeto de una "**Reconsideración**" interpuesta por los Apelantes, la cual fue declarada "No Ha Lugar" mediante *Resolución* de 16 de mayo de 2024.

2

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso de autos se originó el 21 de agosto de 2023, con la presentación de una "**Demanda**" por parte del Banco de Desarrollo Económico para Puerto Rico (en adelante, "BDE") en contra de los Apelantes. En la misma, alegó que suscribió con Agaia un "Loan Agreement" mediante el cual le extendió un financiamiento por la cantidad de $706,800.00. Expresó que el 6 de noviembre de 2018 los Apelantes suscribieron ante el notario público Eduardo Tamargo (en adelante, "Lcdo. Tamargo") dos pagarés, a saber: (1) pagaré de línea de crédito por la suma de $250,000.00 con fecha de vencimiento de 6 de noviembre de 2019, devengando intereses a razón del 6.25% anual y (2) pagaré de préstamo a término por la suma de $456,8000.00 con fecha de vencimiento de 5 de noviembre de 2026, devengando intereses a razón del 6.25%. Adujo que el pago total del referido financiamiento quedó solidariamente garantizado por el señor Santiago, la señora Aguililla y Chemicals mediante ciertos acuerdos intitulados "Warranty", "Trademark Rights Pledge and Security Agreement" y "Security Interest Agreement" otorgados ante el Lcdo. Tamargo.

Asimismo, manifestó que acordaron que el financiamiento del préstamo a término de $456,800.00 se amortizaría con 90 pagos mensuales consecutivos de principal, que incluirían el principal más los intereses y la reserva. Expresó que concedió una moratoria de seis (6) meses para el primer pago y que, al transcurrir dicha moratoria, los Apelantes debían realizar 89 pagos mensuales consecutivos de $5,075.56, que incluían el principal más la reserva. En cuanto a la línea de crédito rotativa de $250,000.00, explicó que el financiamiento se amortizaría mediante pagos mensuales sobre el saldo pendiente del principal más los intereses acumulados en la línea de crédito. Aclaró que todo balance pendiente debía ser pagado para el 6 de noviembre de 2019.

Del mismo modo, BDE expresó que se encuentra en posesión de los originales de los pagarés y que éstos se encontraban disponibles para su inspección tanto por el Tribunal como por los Apelantes. Para evidenciar su posesión, presentó copia de los mismos como anejos a la "**Demanda**". Acentuó que, dado a que están en su posesión, se le considera una persona con derecho a exigir su cumplimiento, y que los Apelantes son solidariamente responsables de ello. Además, expuso que como garantía del pago del financiamiento otorgado a Agaia, ambas partes suscribieron un Acuerdo de Gravamen Mobiliario y Declaración de Financiamiento intitulado: "Security Interest Agreement", suscrito el 6 de noviembre de 2018 ante el mismo notario público y bajo el testimonio núm. 7,008. Añadió que dicha declaración de financiamiento estaba inscrita en el Registro de Transacciones Comerciales con el número 20190000928.

Alegó que los Apelantes tuvieron varios inconvenientes para realizar los pagos, por lo que en septiembre de 2020 comenzaron conversaciones con la División de Manejo de Cartera del BDE para llegar a un acuerdo de pago. Esbozó que los Apelantes nunca firmaron el acuerdo de pago, ya que no cumplieron con la entrega de los estados financieros compilados y personales de los garantizadores. Señaló que en el referido "Loan Agreement" las partes acordaron que se le pondría un gravamen a favor del BDE sobre un vehículo comercial a comprarse con los fondos del financiamiento pero que, a pesar de ello, los Apelantes no adquirieron dicho vehículo. Expresó que entre los requisitos establecidos en el contrato se encontraba la cesión de cuentas por cobrar, notificando mensualmente estas cuentas, y que los Apelantes informaron que los contratos sujetos a cesión serían los de Walmart, Mistolín y la Autoridad de Acueductos y Alcatarillados. Afirmó que los Apelantes no proveyeron dichas cuentas para ser notificadas ya que los referidos contratos no se concretizaron.

De igual manera, BDE destacó que el incumplimiento de Agaia con los términos y condiciones de los contratos, provocó que se declarara la deuda vencida y que se reclamara el pago de lo adeudado por la vía judicial. Manifestó que el incumplimiento de su obligación de realizar los

pagos del préstamo ha generado una deuda por las siguientes sumas: (1) $353,866.13, la cual aumenta a razón de $131.82 diario, correspondiente a uno de los pagarés; y (2) $285,066.11 aumentando a razón de $107.54 diario, relacionado con el otro pagaré. Mencionó que, además de estas cantidades, los Apelantes adeudan la suma de $70, 680.00 que representa el 10% del monto de principal del pagaré, en concepto de costas, gastos y honorarios de abogado. Por último, aseveró que la suma estaba vencida, y era líquida y exigible en su totalidad. En armonía con lo anterior, le peticionó al TPI que condenara a los Apelantes al pago de las sumas reclamadas, más costas, gastos y honorarios de abogado, así como cualquier otro pronunciamiento que procediera en derecho.

El 2 de enero de 2024, los Apelantes presentaron "**Contestación a Demanda**". En la misma, reconocieron haber suscrito los documentos detallados en la "**Demanda**" y negaron la mayoría de las alegaciones consignadas en ésta por tratarse documentos que hablaban por sí mismos. Luego de varios trámites procesales impertinentes a la controversia que nos ocupa, el 10 de enero de 2024, el BDE presentó una "**Moción Solicitando Sentencia Sumaria**" mediante la cual argumentó que no existía una controversia genuina de hechos materiales que ameritara la continuación de los procedimientos ni una vista en su fondo para adjudicar la "**Demanda**". En detalle, sostuvo que no existía contención sobre los siguientes asuntos: (1) que el 6 de noviembre de 2018 le extendió un financiamiento a los Apelantes por la suma de $706,800.00 a través de un contrato de préstamo intitulado "Loan Agreement", (2) que los Apelantes le entregaron un pagaré de línea de crédito por la suma principal de $250,000.00 y un pagaré de préstamo a término por la suma de $456,8000.00, (3) que los Apelantes suscribieron un acuerdo de gravamen mobiliario y declaración de financiamiento intitulado "Security Interest Agreement" y (4) que los Apelantes han incumplido en realizar los pagos del financiamiento, a pesar de un arduo esfuerzo por parte de los empleados del BDE para cobrar dichas cantidades adeudadas. Por todo lo anterior, le solicitó al TPI que declare "Ha Lugar" la "**Demanda**" y le

imponga a los Apelantes el pago de costas, gastos y honorarios de abogado junto con cualquier otro pronunciamiento que procediera en derecho.

Así las cosas, el 5 de abril de 2024, los Apelantes presentaron una "**Moción en Oposición a Moción de Sentencia Sumaria**" (en adelante, "Oposición"), a través de la cual alegaron que existían controversias de hechos materiales que impedían la disposición sumaria del caso. En específico, señalaron que existía disputa sobre si el BDE: (1) le es responsable a los Apelantes por la manera en que se manejó el desembolso del dinero del préstamo, (2) ha actuado en contra de sus propios actos al llevar a cabo un patrón de conducta negligente, (3) incumplió el contrato al no honrar la modificación que fue ofrecida y aceptada, (4) actuó negligentemente al desembolsar los fondos tardíamente y al inducir a los Apelantes a realizar múltiples pagos como requisitos para las modificaciones y (5) si el BDE discriminó contra los Apelantes al negarse a extenderle productos financieros iguales o similares a los que les estaba ofreciendo a otros comerciantes. A tenor con lo anterior, le peticionó al TPI que declare "No Ha Lugar" la "**Moción Solicitando Sentencia Sumaria**" interpuesta por el BDE.

Posteriormente, el 9 de abril de 2024, el BDE presentó una "**Réplica a Oposición a Moción Solicitando Sentencia Sumaria**" (en adelante "Réplica") mediante la cual reiteró que no existían controversias sobre hechos materiales y esenciales que ameritaran la continuación de los procedimientos y a su vez, expuso que los Apelantes incumplieron con el término establecido para presentar su *Oposición*. En respuesta a ello, al día siguiente, los Apelantes radicaron una "**Dúplica a Réplica a Oposición a Moción de Sentencia Sumaria en Solicitud de Costas/Sanciones**" (en adelante, "Dúplica"), a través de la cual alegaron que el BDE no había logrado contradecir la realidad de que existía amplia controversia sobre hechos materiales del caso. Asimismo, expresaron que, a pesar de sus esfuerzos, el BDE se había opuesto al descubrimiento de prueba. Indicaron

que el Apelado presentó en su *Réplica* múltiples argumentos académicos, frases acusatorias y difamatorias y alegaciones sin hechos factuales.

Además, señalaron que no procedía la disposición del caso por la vía sumaria, ya que el incumplimiento de pago surgió como consecuencia de las actuaciones negligentes del BDE y el préstamo en cuestión fue otorgado mediante engaño y fraude. Por último, expresaron que la *Réplica* fue presentada de mala fe con ataques personales contra ellos y que el hecho de tener que responder a dicho escrito les creó gastos y contratiempos adicionales e innecesarios. En consonancia con lo anterior, le solicitó al TPI que declarara "No Ha Lugar" la *Réplica* y le impusiera sanciones y/o costas al BDE.

Finalmente, el 26 de abril de 2024, el foro primario emitió una *Sentencia* a través de la cual declaró "Ha Lugar" la "**Solicitud de Sentencia Sumaria**" interpuesta por BDE sin formular determinaciones de hechos ni de derecho, conforme a la Regla 42.2 de las de Procedimiento Civil. 32 LPRA Ap. V, R. 4.2. Así pues, condenó a los Apelantes a pagar: (1) la cantidad de $687,762.49 por las notas núms. 1010036245 y 1010036248, (2) intereses ascendentes a $93,812.67, una cuantía por gastos por retraso que totalizó $3,628.48 y (3) la suma estipulada de $70,680.00 para gastos, costas y honorarios de abogados. Insatisfechos con esta determinación, el 13 de mayo de 2024, los Apelantes presentaron una "**Reconsideración**" la que fue declarada "No Ha lugar" el 16 de mayo de 2024.

Aún inconformes con lo anteriormente resuelto, los Apelantes acudieron ante este Tribunal mediante el recurso de epígrafe, en el que señalaron el siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIAMENTE AUN CUANDO HAY BASTA [SIC] CONTROVERSIA DE HECHOS MATERIALES.

El 1 de julio de 2024, el BDE presentó "**Alegato de Parte Apelada**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una

moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la

demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos,

cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R., *supra*, pág. 219.

## B.[1]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

Este principio se ha llamado *exceptio non adimpleti contractus* y constituye una defensa en las obligaciones bilaterales cuando la parte que habiendo incurrido en incumplimiento exige el cumplimiento del contrato. Álvarez v. Rivera, 165 DPR 1, 20 (2005). También conocida como la excepción de contrato no cumplido, dicha defensa está disponible al demandado y es oponible al demandante que pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación. Íd., pág. 21. "*El efecto o consecuencia primordial de la aplicación de la excepción es que el demandado no estará obligado a cumplir con su parte hasta tanto el demandante cumpla con su prestación totalmente o libre de defectos.*" Íd., págs. 22-23 (énfasis en el original).

En Master Concrete Corp. v. Fraya, S.E., 152 DPR 616, el Tribunal Supremo discutió la *exceptio non adimpleti contractus*, en conjunto con la *exceptio non rite adimpleti contractus*. Al respecto, señaló lo siguiente:

> En la doctrina civilista, el principio de equidad conocido como la *exceptio non adimpleti contractus*, provee una defensa que permite la desestimación de la acción de reclamación del pago pendiente, en casos en los cuales existe un incumplimiento esencial de parte del reclamante que afecta sustancialmente la reciprocidad de las obligaciones. Este principio se ha distinguido de su corolario, la *exceptio non rite adimpleti contractus*. Esta puede ser invocada por el demandado en casos de cumplimiento simplemente imperfecto, y en virtud de ella, procede sólo que se reduzca el importe de lo pactado en función del valor del costo de las obras que sean necesarias para lograr el cumplimiento perfecto del contrato. Íd., págs. 630-631.

Sobre el particular, nuestro más alto foro judicial resolvió que "el demandado *no* podrá invocar con éxito la doctrina *en los casos en que la aplicación de la 'exceptio non adimpleti contractus' puede resultar contraria al principio de buena fe en la contratación*". Álvarez v. Rivera, *supra*, pág. 22 (énfasis en el original). Por tanto, si la causa del incumplimiento parcial o defectuoso se debe a la conducta del demandado, este último está impedido de invocar la excepción. "Tampoco se podrá invocar con éxito la excepción si el demandado **admitió la contraprestación sin reserva ni protesta alguna cuando pudo comprobar los defectos, ya que iría contra sus propios actos**." Íd. (énfasis suplido).

**C.**

En el contexto del incumplimiento contractual, se entiende que existe dolo cuando se induce a una parte a otorgar un contrato mediante "maquinaciones insidiosas". Pérez Rosa v. Morales Rosado*,* 172 DPR 216, 229 (2007). Esto es, toda conducta artificiosa o ilícita, cuyo fin es engañar a uno de los involucrados, ello tras afectar la prestación voluntaria e informada de su consentimiento en la formación del contrato. J. R. Vélez Torres, Curso de Derecho Civil: Derecho de Contratos, San Juan, Universidad Interamericana de Puerto Rico, 2007, T. IV, Vol. II, págs. 58-61. Así, el dolo "implica todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a reunirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él". Íd.

También constituye dolo "el callar sobre una circunstancia importante relacionada con el objeto del contrato". García Reyes v. Cruz Auto Corp.*,* 173 DPR 870, 886 (2008). Es decir, que el dolo no necesariamente implica una artimaña, sino que el silencio sobre determinados hechos relevantes para viabilizar la contratación, también se cataloga como tal. Bosques v. Echevarría, 162 DPR 830, 836 (2004).

Por otra parte, el dolo no se presume, por lo que tiene que demostrarse, ya sea de forma indirecta o mediante evidencia circunstancial. Además, no todo tipo de dolo produce la nulidad de un contrato. García Reyes v. Cruz Auto Corp.*, supra*, pág. 886. Para que se produzca la nulidad del contrato, el dolo debe ser grave y no meramente incidental. Pérez Rosa v. Morales Rosado, *supra*, págs. 229-230. Además, no debe haber sido empleado por ambas partes contratantes. 31 LPRA sec. 3409.

El dolo incidental es el que afecta las obligaciones accesorias del contrato, y únicamente da lugar a una indemnización en daños y perjuicios. Colón v. Promo Motors Imports, Inc.*,* 144 DPR 659, 667 (1997). Ello responde a que no tuvo una influencia decisiva sobre la obligación, dado a

que, aunque hubo engaño en el modo en que el contrato fue celebrado, el perjudicado sí tenía la voluntad de contratar. Pérez Rosa v. Morales Rosado, *supra*, pág. 230; García Reyes v. Cruz Auto Corp., *supra*, pág. 887. En otras palabras, que el contrato se hubiera celebrado de todas formas, pero bajo condiciones diferentes. Colón v. Promo Motors Imports, Inc., *supra*, pág. 667.

De otro lado, el dolo es grave o causante cuando el acreedor no hubiese celebrado el contrato de conocer de su existencia. S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 64 (2011). Es decir, cuando el engaño recae en los elementos esenciales del contrato; es decir, que tiene un efecto en las motivaciones principales que llevaron a la parte afectada a vincularse. Colón v. Promo Motors, Inc., *supra*, pág. 669. Cabe destacar que la determinación de si el dolo es grave o incidental es una cuestión de hecho. Por lo tanto, está sujeta a la apreciación de las circunstancias concurrentes en cada caso. Acosta & Rodas, Inc., v. PRAICO, 112 DPR 583, 616 (1982). **No obstante, la causa de acción en la contratación por dolo, tanto en su modalidad causante como en la incidental, requieren que el reclamante presente la prueba de la conducta dolosa**. Colón v. Promo Motors Imports, Inc., *supra*, pág. 668.

Ahora bien, el Tribunal Supremo ha establecido que las circunstancias de cada caso son determinantes en la adjudicación de la existencia de dolo que anula el consentimiento. Entre otros aspectos, se deben considerar los siguientes: (1) la preparación académica del perjudicado; (2) su condición social y económica; (3) y las relaciones y tipo de negocios en que se ocupa. Citibank v. Dependable Ins. Co., Inc., 121 DPR 503, 519 (1988); Miranda Soto v. Mena Eró, 109 DPR 473, 478 (1980). Así pues, el dolo puede surgir de un simple hecho o del conjunto de éstos y la evolución de las circunstancias y manejos engañosos. Acosta & Rodas, Inc. v. PRAICO, *supra*, pág. 616.

> De la misma manera, puede ser que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión, sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación, puede dar lugar a la variante

del dolo causante. Colón v. Promo Motors, Inc.*, supra*, pág. 669.

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia* del TPI, a través de la cual se declaró "Ha Lugar" la "**Solicitud de Sentencia Sumaria**" interpuesta por el BDE.

Como único señalamiento de error, los Apelantes plantean que el TPI erró al dictar sentencia sumaria, a pesar de que existen controversias de hechos materiales. Veamos.

Según hemos adelantado, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. La Parte Demandante le extendió un financiamiento a la Parte Codemandada, Agaia Latin America, Inc. por la cantidad de SETECIENTOS SEIS MIL OCHOCIENTOS DÓLARES ($706,800.00), dividido en 2 notas (pagarés), uno en garantía de un préstamo a término por CUATROCIENTOS CINCUENTA Y SEIS MIL OCHOCIENTOS DÓLARES ($456,800.00) para mejoras y compra de equipo, y otro en garantía de una línea de crédito rotativa por DOSCIENTOS CINCUENTA MIL DÓLARES ($250,000.00) para capital de trabajo y compra de inventario. Para evidenciar su acuerdo la Parte Demandante y la Parte Demandada, suscribieron un "Loan Agreement" el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,002.

2. Además, la Parte Demandada suscribió los siguientes Pagarés:

   a. Pagaré de Línea de Crédito por la suma de $250,000.00 a favor de la Parte Demandante, o a su orden, con vencimiento el 6 de noviembre de 2019, devengando intereses a razón del 6.25% anual por encima de la tasa prima anual, tal como anunciado, de tiempo en tiempo, por Citibank, N.A. en sus oficinas principales en Nueva York. El mismo se suscribió el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,003. Esta línea de crédito aparece identificada en los sistemas de contabilidad de la Parte Demandante con el número 1010036245.

   b. Pagaré de préstamo a término por la suma de $456,800.00 a favor de la Parte Demandante, o a su orden, con vencimiento el 5 de noviembre de 2026, devengando intereses a razón del 6.25% anual por

encima de la tasa prima anual, tal como anunciado, de tiempo en tiempo, por Citibank, N.A. en sus oficinas principales en Nueva York. El mismo se suscribió el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,004. Este préstamo aparece identificado en los sistemas de contabilidad de la Parte Demandante con el número 1010036248.

3. El pago total del referido financiamiento quedó solidariamente garantizado por las partes codemandadas, José Anibal Santiago Santiago, Lizette Aguililla Santiago y G3 Chemicals, Inc., mediante Acuerdo de Garantía Ilimitada y Continua intitulado "Guaranty", suscrito por éstos el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,005.

4. El pago total del referido financiamiento quedó también garantizado por un Acuerdo de Cesión por los Derechos de Marca intitulado "Trademark Rights Pledge and Security Agreement", suscrito por la parte codemandada, Agaia, el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,012; un Acuerdo de Asignación de Créditos Contributivos a favor del BDE intitulado "Assignment and Security Agreement (Accounts Receivable Proceeds)", suscrito por la parte codemandada, Agaia, el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,009 y un Acuerdo de Garantía de Vehículo de Motor a favor del BDE intitulado "Security Agreement, Pledge and Assignment", suscrito por la parte codemandada, Agaia, el 6 de noviembre de 2018, ante el Notario Eduardo Tamargo, testimonio número 7,011.

5. El préstamo se amortizaría de la siguiente manera:

   a. Para el préstamo a término de $456,800.00, a base de 90 pagos mensuales consecutivos de principal, más interés y reserva, si aplica. Se le concedió una moratoria de 6 meses en el pago de principal. Pasada la moratoria de principal, la Parte Demandada efectuaría 89 pagos en plazos consecutivos mensuales de $5,075.56 de principal más interés, más reserva si aplica, comenzando el 5 de junio de 2019 y un pago final de principal más interés, más reserva del balance principal más cualquier otro cargo aplicable el 5 de noviembre de 2026, fecha de vencimiento de la obligación.

   b. Para la línea de crédito rotativa de $250,000.00, comenzando el 5 de diciembre de 2018, la Parte Demandada pagaría mensualmente sobre el balance pendiente de principal más intereses que tenga de tiempo en tiempo en la línea de crédito. Sin embargo, todo balance pendiente debe ser pagado para el vencimiento el 6 de noviembre de 2019, con la salvedad de que si el BDE decide renovar el acuerdo de línea de crédito rotativa por un año adicional pues se añade cualquier balance pendiente del periodo expirado al balance en el período renovado.

6. La Parte Demandante y la Parte Codemandada, Agaia, suscribieron un Acuerdo de Gravamen Mobiliario y Declaración de Financiamiento titulado "Security Interest Agreement" el día 6 de noviembre de 2018, ante el notario público Eduardo Tamargo, testimonio número 7,008. El

referido Acuerdo de Gravamen Mobiliario quedó inscrito en el Registro de Transacciones Comerciales del Departamento de Estado, con el número 20190000928, según surge de la Declaración de Financiamiento.

7. La Parte Demandante se encuentra en posesión del original del Pagaré de Línea de Crédito y del Pagaré de Préstamo, los cuales son instrumentos negociables bajo las disposiciones de la Ley de Transacciones Comerciales de Puerto Rico, Ley Núm. 208-1995, según enmendada. Siendo dichos instrumentos pagaderos a la orden de la Parte Demandante y estando éste en posesión de los mismos, la Parte Demandante es su tenedor y, por lo tanto, es una persona con derecho a exigir su cumplimiento. La Parte Demandada es solidariamente responsable del pago de los Pagarés, en su calidad de firmantes y emisores de los mismos.

8. En virtud de los referidos pagarés se adeudan las siguientes sumas al 10 de enero de 2024, según el "Loan Payoff Statement" de la misma fecha: (1) $372,584.70 para la nota Núm. 1010036248, la cual aumenta a razón de $131.82 diario y (2) $300,337.23 para la nota Núm. 1010036245, la cual aumenta a razón de $107.54 diario.

9. Además de las cantidades antes relacionadas, la Parte Demandada, adeuda la suma de $70,680.00 que representa el 10% del monto del principal del Pagaré, en concepto de costas, gastos y honorarios de abogado, según pactado. La declaración jurada presentada para el caso de marras por el Oficial de Reestructuración y Préstamos Especiales del BDE confirma el incumplimiento de pago y grave atraso de la Parte Demandada, causa por la que se declaró la deuda vencida, líquida y exigible.

Establecido lo anterior, nos dirigimos a analizar el señalamiento de error esgrimido. En síntesis, los Apelantes argumentan que: (1) no se perfeccionó el financiamiento puesto que el BDE demoró dieciocho (18) meses en desembolsar los fondos, (2) el BDE fue sumamente negligente en el proceso de desembolso de los préstamos, (3) el BDE cambió unilateralmente los términos y condiciones previamente acordadas y (4) el desembolso tardío provocó que se distorsionaran los planes y obras de la compañía Agaia. Dichas circunstancias, según los Apelantes, producen la aplicación de la excepción de contrato no cumplido adecuadamente que impide el cobro de las cuantías reclamadas por el BDE. No nos convence su postura. Nos explicamos.

Surge del expediente ante nuestra consideración que, el 6 de noviembre de 2018, el BDE suscribió con los Apelantes un "Loan Agreement". A través de este contrato, les extendió un financiamiento por la cantidad de $706,800.00. En detalle, el referido contrato lee como sigue:

FIRST**: Borrower has requested to the Bank, and the Bank has authorized to the Borrower, subject to the terms and conditions hereof ad those terms and conditions contained in the commitment letter dated June 7, 2018, as amended, (the "Commitment Letter"), hereby incorporated by reference, two credit facilities for the principal aggregate amount of SEVEN HUNDRED SIX THOUSAND EIGHT HUNDRED DOLLARS (US$706,800.00)** as follows: (i) a revolving line of credit in the aggregate amount of TWO HUNDRED FIFTY THOUSAND DOLLARS (US$250,000.00) FOR: (a) working capital and (b) to purchase inventory: and (ii) a term loan in the amount of HOUR HUNDRED FIFTHY SIX THOUSAND EIGHT HUNDRED DOLLARS (US$456,800.00) for: a) leasehold improvements and (b) to purchase equipment.

[…]

(b) **Borrower shall make payments on the outstanding balance of principal of the L/C Loan from time to time, provided, however, that any and all amounts of principal or interest owed under the Loan must be paid in full on November 6, 2019**, and in the event the Bank, in its sole discretion, renews the Loan for additional one year terms, the balance then owing and outstanding requirement and the maturity date shall be extended until the next anniversary of thee aforesaid November 6, 2019 date. Notwithstanding anything herein to the contrary, any interest accrued on L/C Loan shall be paid by Borrower monthly, commencing on December 5, 2018, and thereafter on the same day of each succeeding calendar month (énfasis suplido).[2]

**De entrada, debemos enfatizar en que del examen de los documentos que obran en el expediente no se desprende que, como parte de las obligaciones contraídas, el BDE tuviera que desembolsar los fondos pactados en un término determinado o específico**. La prueba estableció que, en esa misma fecha, los Apelantes le entregaron al Apelado un pagaré de línea de crédito por la suma principal de $250,000.00 y un pagaré de préstamo a término por la suma de $456,800.00. Además, para garantizar la deuda suscribieron varios acuerdos, a saber: (1) "Security Interest Agreement", (2) "Trademark Rights Pledge and Security Agreement" y (3) y "Guaranty".

**Para propósitos dispositivos, debemos establecer que, en el presente caso, los Apelantes no cuestionan la validez de las obligaciones contraídas y especificadas en los pagarés en controversia. Tampoco existe contención sobre el hecho de que los Apelantes no han disputado la falta de pago de la deuda contraída. Es**

---

[2] *Véase*, anejos #1 y 2 de la "**Moción Solicitando Sentencia Sumaria**".

**decir, no controversia sobre la concurrencia de los elementos de la causa de acción incoada por el BDE**. Simplemente, los fundamentos jurídicos aportados por los Apelantes giran, esencialmente, en la aplicabilidad de la defensa de excepción de falta de cumplimiento regular que postula que en los contratos bilaterales una parte está impedida de exigir el cumplimiento de las obligaciones de la otra si no ha cumplido con las suyas. Habiendo despejado la controversia principal, adjudicamos en los méritos la misma.

Tal y como hemos adelantado en los acápites anteriores, existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. 31 LPRA sec. 3371. En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. 31 LPRA sec. 3391. Así pues, los contratos son obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. 31 LPRA sec. 3451.

Por otro lado, los contratantes tienen la facultad de establecer las condiciones que tengan por conveniente, siempre y cuando éstas no contravengan la ley, la moral o el orden público. 31 LPRA sec. 6242. En lo que respecta a la interpretación de contratos, si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se dará prioridad al sentido literal de las palabras utilizadas. 31 LPRA sec. 6342. Esto es, cuando sus disposiciones son precisas y no dan margen a ambigüedades o interpretaciones diversas deben aplicarse tal como están establecidas. San Luis Center Apts. et al. v. Triple-S, *supra*, pág. 832.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Solicitud de Sentencia Sumaria**" la *Oposición*, la *Réplica*, la *Dúplica* y la documentación anejada a dichos escritos, hemos llegado a la conclusión de que el TPI actuó correctamente al disponer del caso por la vía sumaria. Nos explicamos.

Un estudio detenido de los documentos que obran en el expediente ante nos, específicamente del "Loan Agreement", no surge que las partes hayan acordado un término específico para que el BDE desembolsara el dinero dado a préstamo, que diera paso a la aplicación de la defensa invocada por los Apelantes sobre la excepción de contrato no cumplido al caso de epígrafe. Ello tiene el efecto de que el argumento esgrimido por los Apelantes, a los efectos de que el Apelado actuó negligentemente y se demoró excesivamente en el desembolso del dinero no tenga efectos jurídicos como defensa al impago de la deuda reclamada por el BDE.

Es decir, de los documentos disponibles, no se desprende que el BDE estuviera obligado a entregar el dinero en una fecha específica. Además de lo anterior, los Apelantes se limitaron a alegar que el aludido desembolso se efectuó luego de 18 meses de suscrito el préstamo, sin más. **Es decir, no aportó evidencia demostrativa de dicho hecho que nos permitiera concluir que, en efecto, así se hizo**. Sobre el particular, conviene recordar que la defensa invocada por los Apelantes sobre la presunta negligencia del BDE debía ser establecida con hechos específicos y con la prueba adecuada. Así lo ha resuelto el Tribunal Supremo al concluir que **en un procedimiento de sentencia sumaria las declaraciones juradas que contienen sólo conclusiones son insuficientes para demostrar la existencia de lo que allí se concluye**. Ramos Pérez v. Univision, 178 DPR 200, 225 (2010).

Nótese que los Apelantes en su *Oposición* utilizaron una declaración jurada del señor Santiago y un correo electrónico dirigido al BDE redactado por él mismo para controvertir casi la totalidad de los hechos sobre los cuales el BDE afirmó que no había controversia. En otras palabras, la documentación que los Apelantes utilizaron para contradecir la mayoría de los hechos fueron documentos preparados por uno de los codemandados, lo cual pone en duda la objetividad y peso probatorio de dicha documentación. Esto muestra que los Apelantes han basado su posición en meras alegaciones, sin ningún fundamento o respaldo sustancial. Para poder controvertir los hechos medulares y esenciales y estar en posición

de respaldar la alegación de que el BDE se demoró demasiado, los Apelantes debieron haber expuesto los términos y condiciones del contrato que demostraban que el Apelado tenía cierta cantidad de tiempo para realizar el desembolso del dinero. Sin embargo, optaron por presentar evidencia que beneficiaba exclusivamente sus propios intereses, sin tomar en cuenta el restante de los documentos aportados por el BDE en su solicitud de sentencia sumaria.

Adicionalmente, debemos enfatizar en que la alegada tardanza en el desembolso de los fondos por parte del BDE está predicada en una presunta omisión de aquella diligencia que exigía la naturaleza de la obligación o el quebrantamiento de un deber impuesto o reconocido por ley. Al analizar detenidamente la *Oposición*, notamos que los Apelantes no aludieron a que el BDE hubiera violentado alguna obligación impuesta por la ley o por el contrato de préstamo suscrito entre las partes. Entiéndase, no se presentó prueba de que el Apelado hubiera actuado negligentemente en el perfeccionamiento de las obligaciones descritas en el contrato de préstamo. Todo lo contrario, no existe controversia sobre el hecho del desembolso del dinero por parte del BDE, lo cual implica que dicha parte cumplió con su obligación, conforme las disposiciones del Artículo 1644 del Código Civil de 1930, y requería que los Apelantes devolvieran al Apelado dicho dinero, según pactado. 31 LPRA sec. 4571.

Además, tampoco se aportó prueba sobre cómo el BDE incumplió con las ofertas de reestructuración de la deuda. La única documentación que se presentó fue que se establecieron dos (2) planes de pago en fechas distintas, sin aludir tan siquiera a hechos específicos a base de los cuales se sostiene el incumplimiento de los mismos por parte del BDE. Simplemente, los Apelantes se limitaron a alegar, **sin proveer prueba documental alguna**, que el BDE incumplió con los planes de pago que ofreció. Es decir, no nos puso en posición de acoger su teoría sobre el otro presunto incumplimiento por parte del Apelado. Tampoco hizo alusión a circunstancias fácticas que nos permitiera concluir que el BDE incumplió con alguna obligación pactada por las partes. **Todo ello es contrario a la**

**doctrina establecida por el Tribunal Supremo a la hora de oponerse a una solicitud de sentencia sumaria. En este caso, los Apelantes se limitaron exponer meras alegaciones sin aportar prueba documental que apoyara su postura**.

Además, aún si ignoráramos todo lo anterior, el Tribunal Supremo ha resuelto que "[t]ampoco se podrá invocar con éxito la excepción si el demandado **admitió la contraprestación sin reserva ni protesta alguna cuando pudo comprobar los defectos, ya que iría contra sus propios actos**". Álvarez v. Rivera, *supra*, pág. 22. Esto fue lo que precisamente ocurrió en el caso de autos. **Los Apelantes recibieron el desembolso del dinero otorgado a préstamo sin reserva ni protesta alguna**. **Fíjese que, si para ese entonces la supuesta tardanza en el desembolso del dinero le hubiera ocasionado los alegados daños a los Apelantes, estos últimos bien pudieron negarse a recibir el dinero por parte del BDE, mas sin embargo, no fue así**. Por tanto, aun habiendo ignorado la ausencia de prueba aportada por los Apelantes para demostrar la aplicabilidad de la defensa, **como cuestión de derecho**, la misma es inaplicable al caso de autos por vía de lo resuelto jurisprudencialmente por el máximo foro judicial.

En suma, no procede la aplicación de la excepción de contrato no cumplido, según alegada por los Apelantes, pues no se presentó evidencia alguna demostrativa del incumplimiento del BDE con alguna obligación contractual o legal aplicable al caso de autos. Reiteramos, los Apelantes se limitaron a efectuar alegaciones vacías, sin prueba que demostrara las teorías expuestas ante nuestra consideración. Además, conforme lo resuelto por el Tribunal Supremo un demandado está impedido de invocar la excepción de contrato no cumplido cuando aceptó **la contraprestación sin reserva ni protesta alguna cuando pudo comprobar los alegados defectos**. Eso fue lo que precisamente ocurrió en el presente caso.

Por otra parte, en lo que respecta a la alegación de dolo, debemos enfatizar en que dicha defensa **nunca** fue invocada por los Apelantes en su "**Contestación a Demanda**" o en la enmienda a la misma, ni tampoco

fue alegada afirmativamente. Los Apelantes se remitieron a efectuar una alegación genérica en su *Oposición*, a los efectos de que "el préstamo objeto del caso de autos fue otorgado mediando engaño, fraude y en claro incumplimiento con las normas que establecen nuestro Código Civil y que el manejo del caso por los pasados años ha sido también de su faz, engañoso".[3]

De entrada, debemos destacar que conforme la Regla 6.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 6.3, la defensa de fraude o cualquier otra materia constitutiva de defensa afirmativa **deberá plantearse de forma clara, expresa y específica al responder a una alegación o se tendrán por renunciadas**. Conforme hemos adelantado, los Apelantes en ningún momento plantearon como defensa afirmativa el dolo o fraude en la contratación, por lo que de ordinario cualquier alegación a esos fines se entiende por renunciada. Ahora bien, aún si hiciéramos abstracción de lo anterior, los Apelantes no aportaron prueba tendente a establecer la misma. Simplemente se limitaron a exponer en la conclusión de su *Oposición* que en el proceso de perfeccionamiento del contrato de préstamo que nos ocupa se constituyó fraude, sin hacer alusión a hechos específicos que nos permitieran evaluar concienzudamente dicha alegación. **Estamos ante un caso en el que no contamos con prueba tendente a establecer maquinaciones insidiosas o cualquier conducta ilícita que tuviera como objetivo engañar a los Apelantes y que afectara así la prestación voluntaria e informada de su consentimiento en la formación del contrato**.

Más aún, la inclusión de alegaciones de fraude por parte de los Apelantes en su *Oposición* es contraria a la norma sentada por el Tribunal Supremo, a los efectos de que que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio Tribunal, "**la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o**

---

[3] *Véase*, Apéndice del recurso de apelación, pág. 122.

**reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones**, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". León Torres v. Rivera Lebrón, *supra*, pág. 54 (énfasis suplido).

Finalmente, los Apelantes aluden someramente a que el BDE no evidenció la tenencia de los pagarés en los que cimentó su causa de acción ante el TPI. Nada más lejos de la verdad.

A poco que examinemos las disposiciones de las Secciones 2-301 y 2-302 de la Ley Núm. 208-1995, según enmendada, conocida como la "Ley de Transacciones Comerciales", notamos que el estatuto reconoce que un tenedor de buena fe es aquella persona con derecho a exigir el cumplimiento de un instrumento negociable al tiempo de que este último no presente evidencia aparente de falsificación o alteración ni era de tal forma irregular o incompleto como para que pueda cuestionarse su autenticidad. *Véanse*, 19 LPRA secs. 601 y 602.

Al examinar el legajo apelativo ante nuestra consideración, notamos que el BDE acompañó, junto a la "**Demanda**", copia de los aludidos instrumentos negociables. De hecho, el Apelado expuso en la misma que "los originales de los referidos pagarés están en posesión de la parte demandante y **disponible[s] para su inspección por el tribunal y por la Parte Demandada si ésta así lo solicita**".[4] Además, es menester destacar que de las copias suministradas por el BDE en la "**Demanda**" no surge indicador alguno de falsificación, alteración o irregularidad como para que pueda cuestionarse la autenticidad de los mismos. Tampoco los Apelantes han expresado que dichos pagarés no fueran los que suscribieron o que las firmas allí dispuestas no fueran las suyas o se hubieran falsificado. Así pues, colegimos que el BDE tenía legitimación activa para recobrar la deuda reclamada en la "**Demanda**" que nos ocupa, según le reconoce las Secciones 2-301 y 2-302 de la Ley de Transacciones Comerciales, *supra*.

---

[4] *Véase*, Apéndice del recurso de apelación, pág. 3, ¶12; *véase, además*, SUMAC, entrada núm. 1 (énfasis suplido).

En fin, los Apelantes no proporcionaron información suficiente o evidencia demostrativa que controvirtiera los hechos medulares y esenciales, según desglosados en la solicitud de sentencia sumaria interpuesta por el BDE, ni cumplieron con el peso de establecer el alegado incumplimiento por parte del Apelado que justificara nuestra intervención con la *Sentencia* apelada. Esto es, los Apelantes descansaron en meras afirmaciones contenidas en sus alegaciones y tomaron una actitud pasiva en su *Oposición* al no proporcionar prueba tendente a establecer controversias sobre los hechos materiales y medulares. Oriental Bank v. Caballero García, *supra*, pág. 8. Por tanto, concluimos que en el presente caso el TPI no erró al disponer del caso sumariamente y condenar a los Apelantes al pago de la deuda reclamada por el BDE en la "**Demanda**".

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones